IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:22-cv-03299-CNS-MEH

PREPARED FOOD PHOTOS, INC.
f/k/a ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

    Plaintiff,

v.

CHICAGO-MARKET-DISTRIBUTORS,
INC. d/b/a CHICAGO MARKET,

    Defendant.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. has filed a Motion for Default Judgment against Chicago-Market-Distributors, Inc. d/b/a Chicago Market ("Defendant"). ECF 12. The motion was referred to me for a Recommendation. ECF 16. No Response was filed by the defaulting party by the applicable deadline, and the Motion is now ripe for review. As set forth below, I respectfully recommend that the Motion be **granted**.

**BACKGROUND**

**I.    Procedural Background**

On December 22, 2022, Plaintiff filed its Complaint in this action. The Complaint contains a single cause of action for copyright infringement against Defendant for unlawful use of a licensed and copyrighted photograph in its advertising. See ECF 1. On January 3, 2023, Defendant was served with a copy of the Summons and Complaint in this action. ECF 7. On February 14, 2023,

following expiration of Defendant's response deadline, the Clerk entered a default against Defendant. ECF 11. The motion was filed on February 21, 2023. ECF 12.  In the Certificate of Service, Plaintiff's counsel certifies that the motion and its attachments were served via US Mail on Chicago-Market-Distributors, Inc. d/b/a Chicago Market, 1477 Carr Street, Lakewood, CO 80214.  This is the Defendant's business registration address, and is the identical address set forth in the Summons, ECF 4, which was returned via Proof of Service, ECF 7. A hearing was held on March 15, 2023.  ECF 17.  Plaintiff's counsel attested that the service of the motion via mail was not returned. Defendant had notice of the hearing.  ECF 22.   The hearing was listed on the Court's publicly accessible calendar.  Defendant did not appear.  ECF 17 (Courtroom Minutes).

Attached to the motion are the following: 1) the Declaration of Rebecca Jones, Secretary of Plaintiff (the "Jones Decl."), ECF 12-1; 2) Proposed Order, ECF 12-2; and 3) the unanswered Complaint, with attachments.  These attachments include: 1) the Certificate of Registration of the Work with the Register of Copyrights dated August 26, 2016, ECF 1-1; and 2) a copy of the screenshot of Defendant's website, displaying the copyrighted Work, ECF 1-2.  I also note that at the Court's direction, Plaintiff filed a supplemental memorandum regarding the Court's ability to take judicial notice of the Internet Archive Wayback Machine. ECF 18.  The supplement includes a revised proposed Final Judgment and Permanent Injunction.  ECF 18-1. These were also served on Defendant at the above-referenced address.  ECF 18 at 3. Plaintiff filed an additional supplement on April 18, 2023, with attached Affidavit of Nathaniel E. Frank-White.  ECF 29.

## II. Factual Background

The Court makes the following findings, drawn from Plaintiff's well-pleaded allegations of the Complaint and uncontroverted record evidence presented at the hearing. In addition, the court accepts the undisputed facts set forth in any affidavits and exhibits. *Purzel Video GmbH v.*

*Martinez*, 13 F. Supp. 3d 1140, 1148 (D. Colo. 2014).

### A. Plaintiff's Business and History

Plaintiff is in the business of licensing high-end, professional photographs for the food industry. Plaintiff generally operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a minimum monthly fee of $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs. Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement. Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its portfolio.

Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month, depending on the number of end users for which Plaintiff's photographs are to be used. The bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own end users, *i.e.,* grocery stores, meat and dairy sellers, etc. Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers. To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

### B. The Work at Issue in this Lawsuit

This lawsuit concerns one (1) photograph titled "ColdCutAsst014" (the "<u>Work</u>") owned

by Plaintiff for which Plaintiff serves as the licensing agent. The Work is available for license on the terms described *supra*. Pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff, Plaintiff registered the Work with the Register of Copyrights on August 26, 2016. It was assigned Registration No. VA 2-014-921. A copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A thereto.

### C. Defendant's Unlawful Activities

Defendant is a Polish specialty food market specializing in a variety of smoked meats, cheeses, and breads. Defendant advertises/markets its business primarily through its website.[1] social media,[2] and other forms of advertising. On a date prior to Plaintiff's above-referenced copyright registration of the Work, Defendant published the Work on its website as follows:



A true and correct copy of screenshots of Defendant's website, displaying the copyrighted Work,

---

[1] *See* https://www.chicago-market.com.
[2] *See* https://www.facebook.com/chicagomarketcolorado/.

are attached to the Complaint as Exhibit B.

Defendant is not and has never been licensed to use or display the Work.  Defendant never contacted Plaintiff to seek permission to use the Work in connection with its website/advertising or for any other purpose – even though the Work that was copied is clearly professional stock photography that would put Defendant on notice that the Work was not intended for public use.  Defendant utilized the Work for commercial use – namely, in connection with the marketing of its business.  Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, and the like.  To ensure that Plaintiff's intellectual property is not being misappropriated and its value is therefore lowered, Plaintiff employs a full-time paralegal and other staff to perform reverse-image searches using Google Images (https://www.google.com/imghp?hl=en) and to review grocery store electronic/print ads to determine whether Plaintiff's images are being misused.  Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees.  Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work at issue in this lawsuit prior to the aforementioned date of discovery.

Through its ongoing efforts to identify unauthorized use of its photographs, Plaintiff first discovered Defendant's unauthorized use/display of the Work on February 16, 2022.
Following Plaintiff's discovery of Defendant's infringement, Plaintiff retained counsel to pursue this matter.  Plaintiff's counsel sent via Federal Express and e-mail one (1) infringement notice to Defendant to notify it of the impermissible use.  Thereafter, Plaintiff's counsel made multiple attempts to communicate with Defendant via e-mail and telephone.  Finally, on November 18,

2022, a staff member at counsel's office called Defendant and spoke to 'Vic' who was represented himself as an owner who was in charge of Defendant's website.

During that call, Defendant (through 'Vic') proceeded to berate undersigned counsel's staff member by stating verbatim: "If you wanna come down here to fight me, then fight me" and repeatedly calling the staff member a "f***ing bitch." No further efforts were made to communicate with Defendant following this exchange, other than to provide notice of the default and default judgment hearing as required by law.

## **LEGAL STANDARDS**

Federal Rule of Civil Procedure 55 governs motions for default judgment. After the Clerk's entry of default, a defendant no longer may defend a claim on the merits. *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) ("[D]efendant, by his default, admits the plaintiff's well-pleaded allegations of fact")); *see also id*. at 1124 ("Defendants do not have a constitutional right to a jury trial following entry of default.").

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *McCabe v. Campos*, No. 05-cv-00846-RPM-BNB, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008). In determining whether entry of default judgment is warranted, the court first must consider personal and subject matter jurisdiction. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default judgment); *see also Dennis Garberg & Assoc., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (district court erred in failing to determine personal jurisdiction issue before considering entry of default judgment).

Next, for purposes of considering whether a claim for relief has been established, the well-pleaded facts of the complaint relating to liability are deemed true. *Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)); *see also Personal Indus. Loan Corp. v. Forgay*, 240 F.2d 18, 20 (10th Cir. 1956) ("By failing to appear and permitting a default judgment to be entered, [defendant] admitted only facts well pleaded."). In addition, the court accepts the undisputed facts set forth in any affidavits and exhibits. *Deery American Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Satriano v. Countrywide Home Loans, Inc.*, 14-cv-02216-KLM, 2015 WL 1887260, at *4 (D. Colo. April 23, 2015) (quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) ("[U]pon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof." (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975))).

## ANALYSIS

As stated above, the entry of default judgment requires the Court to ensure both jurisdiction and sufficient well-pleaded fact allegations to support the claims on their merits. *See also Balducci v. Congo Ltd.*, No. 17-cv-02755-RM-MEH, 2019 WL 331926, at *1 (D. Colo. May 29, 2019). Undertaking that inquiry shows that Plaintiff's Motion may be granted.

**I.       Jurisdiction**

Here, the record reveals that Defendant resides in Colorado and was served with process at its registered place of business in Lakewood, Colorado. As such, the Court has personal jurisdiction over Defendant. In addition, this is a copyright infringement case, and the federal courts have original jurisdiction in such cases. *See* 28 U.S.C. § 1338. The Copyright Act creates a cause of action in favor of the owner of a copyright for direct infringement. 17 U.S.C. § 501.

**II.      The Claim's Merits**

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)] ... is an infringer of the copyright or right of the author, as the case may be." "'To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991)).

**A. Plaintiff Owns a Valid Copyright**

With respect to the first element, a certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "Once a party produces a registration certificate, the burden of disputing the validity of the copyright shifts to the other party." *Okla. Nat. Gas Co. v. Larue,* No. 97-6087, No. 97-6093, No. 97-6224, 1998 U.S. App. LEXIS 21394, at *9 (10th Cir. Sep. 1, 1998).  Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights as set forth above.  By virtue of its default, Defendant does not have any right to challenge Plaintiff's registration/ownership of a valid copyright.

### B. Defendant Copied the Work

The copying element of an infringement claim has two components. *Blehm*, 702 F.3d at 1199. First, a plaintiff must demonstrate that the defendant copied the plaintiff's work as a factual matter. *Id.* Second, the plaintiff must establish "substantial similarity" between the allegedly infringing work and the elements of the copyrighted work that are legally protected. *Id.*

Here, the screenshots of Defendant's website unequivocally show Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published a duplicate image of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted work and a Final Default Judgment should be entered against Defendant on Count I of the Complaint.

### C. Plaintiff's Damages

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages are "often measured by the revenue that the plaintiff lost as a result of the infringement, which includes lost sales, lost opportunities to license, or diminution in the value of the copyright." *Lorentz v. Sunshine Health Prods.*, No. 09-61529-CIV-MORENO/TORRES, 2010 WL 11492992, at *4 (S.D. Fla. Sept. 7, 2010); *Guarneros v. Denver Green Party*, Civil Action No. 1:19-cv-00139-RM-NYW, 2020 WL 7055493, at *4 (D. Colo. Dec. 2, 2020) ("One way to measure actual damages in situations where the infringer could have bargained with the copyright owner to purchase the right to use the work is to assess "what a willing buy would have been reasonably required to pay to a willing seller for plaintiff['s] work.") (quoting *Jarvis v. K2 Inc.,* 486 F.3d 526, 533 (9th Cir. 2007)).

> 'Actual Damages' means the amount of money adequate to compensate Plaintiff for the reduction of the fair market value of the copyrighted work caused by Defendant's infringement. The reduction of the fair market value of the copyrighted work is the

> amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by Defendant of Plaintiff's work. That amount may be represented by the lost license fees Plaintiff would have received for Defendant's unauthorized use of Plaintiff's work.

*Live Face On Web, LLC v. Integrity Sols. Grp., Inc.,* 421 F. Supp. 3d 1051, 1071–72 (D. Colo. 2019).

As set forth in the record, Plaintiff exclusively operates on a subscription basis whereby it provides access to its library at $999.00 per month with a minimum twelve (12) month contract commitment (*i.e.*, a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year). Plaintiff for the most part does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model. Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, and internet marketing. Plaintiff's customers can spend thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products and services.

Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees reduces the value of Plaintiff's library. Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees. Plaintiff incurs expenses, such as payroll, to protect the integrity of its library.

Plaintiff's library of photographs was created over a fifteen to twenty year period of time; new creative works are added to the library even now. Plaintiff has employed or contracted with professional staff photographers who specialize in high-end product/food photography. These

photographers are provided specific instructions with respect to Plaintiff's vision and overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal. For any image, including the one at issue in this lawsuit, Plaintiff's photographers spend hours using specialized lighting and equipment and take dozens of images before identifying one or two for inclusion in Plaintiff's library. For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising.

Plaintiff first discovered Defendant's infringement of the Work in approximately February 2022 when the Work was published on Defendant's website. By use of the Wayback Machine, an internet archive system,[3] Defendant has published and/or displayed the Work on its website since at least April 2016. However, Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully investigate the extent of its infringement and/or the exact date on which the Work was uploaded and removed from Defendant's website. However, because the Work was published since at least April 2016, a minimum six-year license for the Work would apply in making a damage calculation.

I note that in prior similar litigation, the $11,988.00 annual license was found to be a useful tool to properly calculate Plaintiff's actual damages.

> Here, Plaintiff provides access to its library at a price $999.00 per month with a minimum twelve-month contract commitment,

---

[3] The Tenth Circuit has not decided whether courts can take judicial notice of webpages from the Wayback Machine. *United States v. Wirichaga-Landavazo*, 21-4070, 2022 WL 500651, at *2 n.2 (10th Cir. Feb. 18, 2022). Under the circumstances of this case, it is appropriate. See *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th Cir. 2007). Plaintiff has provided adequate documentation in support of its damages claim in this regard, including a Declaration of Nathanial E. Frank-White and screenshots of the Internet Archive's records dated ECF 29-1.

> meaning, a licensee must pay $11,988 for access to any of Plaintiff's photographs for any amount of time within a one-year period. (DE 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this annual subscription fee. (*Id.* ¶ 4). While that demonstrates that licensors have indeed licensed its library on an annual basis for $11,988, it is unclear whether any licensor has paid that amount to utilize a single photograph in the library. Nevertheless, I find $11,988 to be a useful proxy given the below-described difficulties in calculating with precision Plaintiff's actual damages.

*Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC*, No. 21-82129-CV, 2022 U.S. Dist. LEXIS 205649, at *10 (S.D. Fla. Mar. 22, 2022). *See also Prepared Food Photos, Inc. v. 193 Corp.,* No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photograph); *Prepared Food Photos, Inc. v. Miami Beach 411 Corp.,* No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); *Prepared Food Photos, Inc. v. Fat Daddy Co.,* No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); *Prepared Food Photos, Inc. v. Perry Wings Plus, Inc.*, No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); *Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc.*, No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto).

Defendant's default has inhibited Plaintiff's ability to access information necessary to fully

calculate Plaintiff's actual damages, and similarly, has prevented Plaintiff from discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b).[4] Based on the record before me, the fairest beginning measure of its actual damages in this case is the $11,988.00 annual cost for licensing any image from Plaintiff's library multiplied by the number of years of use. In *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020), the United States Court of Appeals for the Second Circuit held that the Copyright Act imposes a three-year lookback damages bar, meaning a plaintiff can only recover for damages incurred in the three years prior to the filing of the lawsuit. Yet in *Starz Ent., LLC v. MGM Domestic TV Distribution, LLC*, 39 F.4th 1236, 1243 (9th Cir. 2022) the United States Court of Appeals for the Ninth Circuit held that a copyright plaintiff may recover damages dating back to the beginning of the infringement. Given this conflicting precedent, and no direction from the United States Court of Appeals for the Tenth Circuit, Plaintiff seeks the lesser-inclusive three-year lookback period of licensing fees, calculated as $35,964.00 ($11,988 x 3 years of use).

D. Entry of a Permanent Injunction is Appropriate

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." "Section 502(a) of the Copyright Act specifically provides for injunctive relief. 17 U.S.C. § 502(a)." *Virgin Records Am. Inc. v. Johnson*, 441 F. Supp. 2d 963, 965 (N.D. Ind. 2006). "Injunctions are regularly issued pursuant to section 502 because 'the public interest is the interest in upholding copyright protections.'" *Id.* (quoting *Autoscale, Inc. v. Nat'l Educ. Support Sys., Inc.,*

---

[4] To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).

994 F.2d 1476, 1499 (10th Cir.), *cert. denied*, 510 U.S. 916, 114 S. Ct. 307, 126 L. Ed. 2d 254 (1993)). "Moreover, it is not uncommon for courts to issue injunctions as part of default judgments." Id.; *See Johnson v. Kakvand*, 192 F.3d 656, (7th Cir. 1999) (affirming default judgment that included injunction).

"The Supreme Court [has] stated that courts must apply the 'traditional four-factor framework' which governs the award of injunctive relief" to permanent injunctions. *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1260 (D. Kan. 2009) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006)). The court considers: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Shumaker v. Burgess Servs., LLC*, No. 21-cv-02291, 2022 WL 4104272, at *4 (D. Colo. Sept. 8, 2022) (citing *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009)); see Fed. R. Civ. P. 65.

As established by the well-pled facts of the Complaint and admitted by virtue of Defendant's default, this Court has jurisdiction over this action. Defendant's conduct has caused and may continue to cause irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law. Defendant has not appeared in this action and, therefore, has given no assurances to the Court that the infringing activity will stop. The Defendant's ability, if not enjoined, to use Plaintiff's Work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the Work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's works if it is already associated with a competing business. And potential licensees of Plaintiff will not want to pay license fees to Plaintiff if other commercial enterprises take and use Plaintiff's photographs for their own commercial purposes

without paying the fee. An injunction would place minimal hardship on defendant. Indeed, "[t]he potential injury to an allegedly infringing party caused by an injunction merits little equitable consideration and is insufficient to outweigh the continued wrongful infringement." *Medias & Co., Inc. v. Ty, Inc.,* 106 F. Supp. 2d 1132, 1140 (D. Colo. 2000) (citation omitted). Finally, a permanent injunction will protect copyrighted material and encourage compliance with the Copyright Act. *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.,* 994 F.2d 1476, 1499 (10th Cir. 1993), *overruled on other grounds* by *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011) ("In copyright cases ... this factor normally weighs in favor of the issuance of an injunction because the public interest is the interest in upholding copyright protections.")).

Accordingly, I recommend the Court enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, prohibiting them from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

## **CONCLUSION**

Satisfied that it has jurisdiction and having found the well-pleaded facts of the Complaint to establish a legitimate basis for entry of default judgment on the copyright claim herein , the Court respectfully RECOMMENDS[5] that Plaintiff's Motion for Default Judgment [filed February

---

[5] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any

21, 2023; ECF 12] be **granted** against Defendant and that Plaintiff be awarded $35,964.00 for Defendant's infringement of the Work, as well as prejudgment interest.  It is further respectfully RECOMMENDED that the Court permanently enjoin Defendant from infringing activities.

Entered  April 18, 2023, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).